We'll start with our first case of the day, United States of America v. Wayland Demond Hinkle. Mr. Page, welcome back. May it please the Court. The one thing that I want to make sure that I have a chance to discuss first, if I don't get to anything else today, is why Mr. Hinkle should get relief if this Court or the Supreme Court ultimately vindicates my view of Dick DeCamp and holds that statutes may be divided only into their elements, which are defined as those facts as to which the defendant enjoys a right of jury unanimity in every case. Because I am an optimist, I hope also to discuss why that is the correct rule and why Mr. Hinkle might prevail even if statutes may be divided into something other than elements. Well, isn't that the better approach, though? If you can win either way, why are we rushing around to take on the Ninth Circuit and everybody and their brother? So why don't you tell us how you can win anyway? All right. I'll move to that. The reason for that is that DeCamp, if it stands for nothing else, my view of DeCamp is that it says that the use of or, a disjunctive statute, is a necessary but insufficient condition in order to divide a statute. But it is at a minimum a necessary condition to divide a statute. And the Texas Health and Safety Code definition of delivery does not say actual transfer, constructive transfer, or offer to sell. It says actual or constructive transfer. So those are disjunctive statute subsections and then says in a separate sentence, delivery also includes offers to sell. So as far as the wording of the statute is concerned on its own, it does not say that offer to sell is a separate means of committing the offense. It merely says it qualifies as delivery just like actual and constructive transfer qualify as delivery. As far as we know, it might overlap with those or it might be a subset of those. And so an indictment like this one which says actual transfer, the defendant engaged in actual transfer, does not exclude offer to sell as far as the text of the statute is concerned. So at a minimum, DeCamp says that a statute needs to be disjunctive. But don't we look to State law to determine authoritatively what elements are versus what means of? We sure do. And I don't think that anything the government has produced has demonstrated that those are distinct. The cases that it cited, Minovich and Conaway, those cases say that actual and constructive transfer are different. Because they say you can't plead actual transfer and prove constructive transfer, or plead constructive transfer and prove actual transfer. But they don't deal with offers to sell to the extent that they say in dicta offers to sell are different or distinct. They're mutually exclusive. That would be an evidentiary issue, wouldn't it? I mean, just the evidence wouldn't support the allegation. But if you had, if they charged disjunctively offer to sell and actual delivery or actual delivery, and there was evidence to support both, the jury could convict on either. It wouldn't have to be unanimous. That's right. That's right. As long as there's evidence to support both theories, or either, I guess. That's right. That's right. And that's the reason I think that for certain Mr. Hinkle should prevail if the Court embraces my view of De Camp, which is that jury unanimity is a necessary condition in order to subdivide a statute. You can only subdivide statutes into elements, and elements are those facts that have to be proved to the unanimous satisfaction of the jury. So if I may move to that issue about why Mr. Hinkle prevails if my view of De Camp is vindicated, whatever else my colleague and I have shown or failed to show about Texas law, I think one proposition is very clear, and it is Texas law holds quite clearly that the defendant is not entitled to a unanimous verdict on the question of whether he offered to sell a controlled substance as opposed to actually or constructively transferring it. The Houston Court of Appeals held precisely that proposition in a unanimity challenge, a double jeopardy challenge in Rodriguez, and then the Texas Court of Criminal Appeals in Lopez quoted that portion of Rodriguez and said we believe that is correct. So the most authoritative statement about the relationship of offer to sell to actual transfer and constructive transfer demonstrates that there is no right of jury unanimity on that question. See, when De Camp's came out, I thought it was talking about an overbroad, which is what it says it's talking about, an overbroad statute such as in California where it criminalizes entry with the intent to do something unlawful, even if the entry itself is walking into a store, you know, walking into Wal-Mart like everybody else, which is not by itself unlawful. And so then it's overbroad because any entry is good enough, whereas the generic definition requires something else, some sort of unlawful entry. That is not a means, elements, whatever. It's simply that the word entry is overbroad, just like they use this long hypothetical about weapons and say if the statute said weapons, that's overbroad because it can encompass guns, it can encompass, you know, if you're a prize fighter, maybe your fists are weapons and blah, blah, blah. And so it's overbroad because some of them will be violent crime and some of them will not, whereas if it had eight different weapons, and this is the Supreme Court itself, then that's a different story. So if it was gun or knife or, you know, whatever, hammer, then we could look and say, well, he was charged with gun, or we can't tell what he's charged with, and then that would inure to your favor. So how does that, if that's, so indulge me for a moment that that's a correct reading of DISCOMPS, how do you win under that reading? There's, well, the way I win under that reading is because I don't think that the Texas statute is disjunctive, but it is unitary in the sense that offers itself is not set off in the disjunctive. But there is no doubt that the question of a disjunctive statute that didn't have a right of jury unanimity was not presented by the facts of DICOMPS. And the fact that it didn't address that question, it wasn't presented to it factually, is the reason there's a circuit split about what it means in cases where there is a disjunctive statute but no right of jury unanimity, and so we have to look at the reasoning of DICOMPS to resolve that next issue. I thought DISCOMPS applied because delivery is an element of the Texas statute. It's the definition of delivery. Delivery is overbroad, and you can't, you can't narrow it under Texas law. I think that's precisely my view. The government... That's your view because you, the or, the lack of or. If it said delivery is actual transfer, comma, constructive transfer, comma, or offer to sell, then you would be in a different position in arguing sort of your, your backup premise as you presented it to us originally, the I win any other, any way. That's correct, but as Judge Owen said, I think even if we were to read the statute as though it were, there were an implied or in front of offer to sell, it would still be one element, which is delivery, as to which there is no right of jury unanimity. And the reasoning of DICOMPS is we compare elements when we apply the categorical approach. If we were to use the categorical approach and use Shepard documents, do you think that indictment alleges actual transfer and he pled guilty to actual transfer? Why, why would not, not apply? Well, because the, the indictment is alleging something other than the element is, is the reason. It's, it's alleging a means in that case. And if we read DICOMPS as the government wants to, to say anything that appears in an indictment is an element, at least if the jury has to find it, then I think that proves too much because there are facts that appear in an indictment, for instance, under Texas practice, that, that merely amplify the manner and means that don't even appear in the statute. That was the situation in, in Calderon-Pena, injury to a child by causing an auto accident. And the, the government argued in, in, in Calderon-Pena that that becomes an element because the jury has to, has to find it in the case or the defendant has to admit it for notice purposes because it appears in the indictment and, and gives the defendant notice. And, and this Court said no, elements come from the statute and they are facts that the, that the Court has to prove in every case. And so, and so the fact that. I just don't think they really were, and I'm not saying that the Supreme Court won't go your way or won't go some other way. I just don't think they went that way one way, clearly one way or the other in DICOMPS. I think that they were dealing with what they viewed as like what I said. Entry means a lot of stuff and so it's over broad. Just like weapon can mean a lot of stuff versus gun or knife or this or that. And they just weren't dealing with a means elements question. I mean, this has been sort of invented by everybody since then. They talk a little bit about the sort of implicit means the, you know, Colonel Mustard in the library with the candlestick thing, but there's not, they're not dealing with that. So to me, for us to sit here and pretend like we're either following or not following the Supreme Court, as you say, they really didn't address this. So then to me, the better question is, what is the right answer? Well, I think, I think the right answer is, is also derived from the reasoning of, of DICOMPS. It's also fidelity to the, to the language and the, and the principles of DICOMPS, even though it's, it's not squarely, it's not squarely decided. And I, and I think if you want to say that DICOMPS didn't have anything in mind at all about whether means or elements were the appropriate standard for divisibility, you have a hard time explaining Richard, citation to Richardson versus United States, which is a case which deals precisely with the, with the difference between means and, and elements. And when it cites at Richardson, it's citing it for the proposition that only elements are proven to the unanimous satisfaction of a jury. And, and, and Richardson uses the language of means versus elements. So when, when the court cites that with approval, the, the suggestion, the implication is that it, it's contemplating the same definition of elements that appears in Richardson. The other thing that I think is clear and the other reason that, that the reasoning of DICOMPS, DICOMPS supports my view is it says part of the reason that we have to have a statutory text, we have to, can only look at facts that appear in the statutory text, is that's the only way we can be sure there's a unanimous jury's finding. So the reasoning of DICOMPS is that we can only consider those facts that have to be proven to the unanimous satisfaction of a jury. Yeah, but it, really the only place that means elements to me is really squarely squared up in the, in the majority opinion is this footnote 2, which doesn't seem to help you. I, I think it. Footnote 2 says whatever the statute lists, the documents we approved in Taylor and Shepard would reflect the crimes elements. So that's back to Judge Prada's question. We look at our case of Mr. Hinkle, and it says actual transfer. So all this other stuff seems to be sort of hypothetical, which is exactly what the majority opinion seemed to be kind of dismissing, like let's not have a whole Fifth Circuit argument about, you know, speculation on means and elements and juries and this and that. We have a charging document here, and it says actual transfer. So why isn't that good enough? I think the footnote 2 does support my position because it begins by saying, by, by rejecting the, the dissent's contention that, that these, that in the prior cases we were dealing only with means rather than elements. It's saying that's news to us. As far as we're concerned, all of those statutes involved different elements rather than different, than different means. So I don't think it signals at all a retreat from the proposition that you can only divide statutes into elements. Now, as far as the second part of that footnote, which says you only look at the indictment, well, I think that means great. But you look at the Taylor-Shepard document. Indictment, jurisdiction, plea, qualiquy, and plea agreement. Right. There are certainly cases where looking at the indictment or those, those Shepard documents, or particularly a charging instrument, would be of help to a busy district court in identifying the elements. For instance, if offer to sell and actual transfer were listed in the same count, we would know that they are, that they are not separate elements, because you have to have a one-to-one correspondence between counts, between counts and offenses. And if they were listed in two different counts, we would know that they are elements, because you have to have a one-to-one correspondence. Otherwise it would be multiplicitous. So, so I think it's fair to say that Justice Kagan there may have underestimated the difficulty of finding what an element is. But I don't think that that, that footnote retreats at all from the proposition that, that you only look at elements. Well, the dissent points out that both the district court and the court of appeals had looked to his, the guilty plea, and that as a practical matter, he had, he had admitted and pled guilty to facts that would convict him of generic burglary. And the court rejected that argument, as I read the scams. Precisely. And, and I think that's another, that's a reason that we can't say that anything that is, appears in an indictment or is admitted is necessarily, necessarily constitutes an element or is something that the court can consider at a, at a Shepard document, because if that were true, then, then sentencing courts could consider even facts that don't appear in a statute. There's a difference between facts and what you're charged with. So, I'm charged with using a weapon and the facts are that I took an Uzi and blew up a, you know, and, and barraged a whole bank with it. The question though is whether weapon counts, not how egregious and terrible the facts were. You see what I'm saying? So, I mean, the facts are, I agree that you never can just look at the facts and go, well, wow, this is really awful. If the statute is overbroad, it criminalizes people having sex with someone 25 or younger and the generic offense is 18 or younger, you can't look and say, well, this kid was 12 under the facts because it's an overbroad statute from the start. But that's not what we have here, is it? Don't we have the language actual transfer, which is different from just the facts of what this guy did? We do. It appears in the statute. I think the point that I'm trying to make is that if its appearance in the indictment, notwithstanding the fact that it's not defined as an offense by the State of Texas, were enough, then we could also look at, consider allegations in the indictment, the Uzi, et cetera, even if they didn't appear in the statute. If I can consume a touch of my rebuttal time here, one, I need to make a correction. I cited Guerrero v. State, a court of criminal appeals case. I neglected to note that that was a plurality decision. I cited that, and I'll correct that in writing tomorrow. Thank you. Thank you, Mr. Page. Mr. McKay. May it please the Court. Brian McKay on behalf of the United States. Unless the Court prefers otherwise, I would like to first address the issue that the appellant actually raised in his first brief and then move to the new argument concerning the divisibility. With respect to the means versus elements issue, what Mr. Hinkle has yet to explain, and I think he has to, is how, on this particular indictment, the State of Texas could have gotten a conviction against him by proving some method of delivery other than actual transfer. If I agreed with Justice DeLitto, I agree with you, but I don't read the Supreme Court or, frankly, our opinions other than that one case that was pre-discounts is agreeing with you. You look at the element, and even if there's a way of committing the element of delivery that is not within the guidelines, you have to presume, no matter what the statute, it's an overly broad statute. And, therefore, no matter how you actually commit a delivery, it's just like entry. If entry is overbroad, delivery is overbroad. Well, I think DeKalb would say first we look at whether the statute is articulated alternatively or overbroadly. Well, delivery is the element, and then there's a definition in a separate statute of delivery. And we have authoritative decisions from the Texas court saying you do not have to you can convict, just give the definition of delivery statutory to the jury and let them decide. If the defendant was charged of delivering all three ways, but Conaway You're making DeLitto's argument in his dissent. He was charged with burglary that would be generic burglary, and he admitted to burglary that was generic burglary. Now, if I may, I believe in that case under the California statute If you can be charged with committing an offense, it doesn't matter what you're charged with. DeLitto made that argument in another case. I wish I had it here, and it was rejected. What matters is what the state had to prove. What facts the state necessarily had to have proved to sustain that conviction Under the statute. Under the statute, yes. And all they had to prove under Texas law was three alternative means of delivery. That's all the statute required them to prove. And respectfully, I disagree, because Conaway, Stevens, and Minovich, all three say that when the state chose to charge him with delivery only by the method of actual transfer, then that was the method that the state had to prove beyond a reasonable doubt. Their charge is just a question of sufficiency of the evidence to support the verdict. It's not a statutory construction. If that was the case, they could have upheld it, because the evidence, for example, in Stevens, it showed that there was a transfer. The problem was it showed there was the wrong kind of transfer. And because there was the wrong kind of transfer, not the transfer that was actually charged, but a different kind of transfer that would have been sustained had they charged it that way, then the defendant was acquitted. So necessarily, Mr. Hinkle, when he That's a whole different concept of variance between the pleadings as opposed to what's a statutory element. And I think, if I may, step to this footnote, too. All of that is predicated upon the view of decamp as meaning element in the Richardson sense. And I think there are several indicators that that's not what the court intended. First of all, going to footnote number two, they say whatever the statute has, whether it's means or elements, when it's divisible, and I'll explain that it is here, we look at the documents, and those documents tell us what the elements are. There's no need to parse state law to figure out whether they're truly like Richardson elements or means. Now, there are two conclusions we can draw from that footnote. We can do, as Mr. Hinkle does, and conclude seven of the justices got it wrong because, actually, when you look at the documents, it doesn't tell us what the Richardson elements are. Or, and actually we do, the court was wrong, we do have to actually parse state law to figure out whether it's an element in the Richardson sense or whether it's a means. Or, the other conclusion is that, just as the Tenth Circuit did in Trent, is to conclude when they use the term elements interchangeably with the term statutory phrase or potential offense elements, when the court used that term in decamps, it didn't. And for all the attention that footnote two has gotten, I think there's another valuable clue in footnote three in explaining what they mean when they talk about the term element in decamp. Because there they said what is not an element. They said a non-element is, by definition, a fact that's not necessary to support the conviction. And here, because of this particular indictment. It's necessary under the statute, not under the charging document. They're two different things. Had Mr. Hinkle gone to trial and the state of Texas proved that he had offered to sell, and offered to sell alone, he would have been entitled to an acquittal. Had he gone to trial and the government proved, beyond a reasonable doubt, that he had instructively transferred, he would have been entitled to acquittal. To sustain a conviction on that indictment, the state of Texas necessarily had to prove, and he necessarily had to admit, and he did admit, that he actually transferred heroin. If they chose to prosecute, that means a violating. The statute does not require that. The statute... Isn't that the parsing of the state law that we're not supposed to be doing under footnote two, though? Deciding whether they could have charged it as L3 or 1 or 2 or half or this or that. They charged how they charged it. Why can't we accept that? Well, I think that... I don't know that we have to go there. Going there confirms that understanding. But I think what the court was saying in footnote two, and not parsing state law, is we're not to have this discussion about, well, is it truly a means that it, in and of itself, if it's charged two or three or four different means, is that entitled to unanimous jury verdict? Or is it a Richardson... Is it an element in the statute? Well, is it fair to say that we're allowed to, under footnote two, simply look at what the state did, and the state having charged actual transfer, we're done? Absolutely. And is that a fair reading of that, I guess is my question. Absolutely. I think that's a fair reading of two confirmed by footnote three, also confirmed by Taylor. Now let me ask this question. Is it even arguably a disjunctive definition? Because your opponent is saying, look, it doesn't say actual transfer, constructive transfer, or offer to sell. It says actual constructive transfer, period. Offer to sell, delivery includes offer to sell. And, therefore, isn't even a disjunctive means, if you will, or a disjunctive definition. And so we don't even really get to that question. Why isn't that a clear way to look at it, and avoids this rather large tater that we have here? I think that that is a superficially attractive argument. But if we look at it purely as a logical syllogism and say, delivery means A or B, it includes C. Maybe there's some attractiveness to that argument. But when we remove terms that don't have any meaning, A, B, and C, and  offer, we see that that syllogism starts to break down. Because never would I say, I transferred my car to a friend, and then someone said, so your friend has it, or your friend owns it. No, no, no. I simply offered to sell it to my friend. Well, then I didn't transfer my car to a friend. That doesn't break down. And if we want confirmation that these are. You're saying delivery including offer to sell doesn't mean transfer includes offer to sell. Correct. That's your answer to his point. Absolutely. But also, if we need confirmation of that, confirmation is found in Conaway, where almost 30 years ago, the Texas Court of Criminal Appeals said, actual transfer, constructive transfer, offer to sell are three, quote, mutually exclusive ways of proving delivery. Let me ask you this. Obviously, if we can discern the meaning of desk camps, which I respectfully am struggling with, but if we can discern it, we have to follow. And we can discern its answer to this question. We've got to follow that regardless. So that's point number one. But let's assume we can't, or we conclude that desk camps was one bridge before our bridge. And we're not quite there with it. And we, therefore, have to actually get this mystical right answer in advance of knowing what the Supreme Court thinks. Let's imagine that we're there. Why is your answer the right answer? I'm not going to beg the court's pardon. I'm not sure I understand. I think you're asking. So we've been fighting about what desk camps means. Now let's just forget about it. Let's say for the moment that it simply doesn't answer the question. We'll just assume that argument. And that may not be an accurate assumption. But we'll just make that assumption. And we are deciding anew the question of how you approach this, informed by but not helped by desk camps. What is the right answer? What ought to be the way that we approach these things? When we look at Taylor, when we look at Shepard, what we see are the three concerns that animate the categorical approach. The textual concerns, which, granted, that's under ACCA statute. But I think it's the same with the guideline speaking in terms of a conviction, not behavior that the defendant committed. The constitutional concerns, there's the Sixth Amendment concern. Again, a statute, which we don't have with the guideline. But still, the right answer is true to that concern, too. And the practical concerns of having collateral trials over conduct that occurred, you know, decades ago. The right answer is when a conviction can't have existed without establishing a fact. That fact is necessary to that conviction. Then the court can rely on it. And I would point the court back to where it all began at Taylor. At page 602, the court introduced this thing that later became known as the modified categorical approach. And there they said, if, for example, a burglary statute prohibited breaking into a building in an automobile, and the indictment only charged breaking into a building, and a jury necessarily would have had to have found that to convict, then the government should be permitted to rely on that conviction. I thought that, too. But I'm looking at Section 3 of desk camps. And they specifically say what the Ninth Circuit did. And they say, just let's say entry and delivery are equivalent. And we've got substitute delivery here. They said that the Ninth Circuit thought it could look to reliable materials, the charging document, jury instructions, plea colloquy, and so forth, to determine what facts can confidently be thought to underlie the defendant's conviction in light of the prosecutorial theory of the case and the facts put forward by the government. They totally rejected that. They said, we looked at the statute, not the way it was charged, not the way it was pled, not what the jury found. We looked at the statute. If it's indivisible, you can't look at those things. And it seems to me delivery is indivisible. I mean, I wish I could go with you, but I can't get around this. I understand, Judge. Here's how. I think that the court didn't reject, well, it rejected the court, the district court, looking at the underlying documents. Ninth Circuit. Yes. But it rejected that, not because the court should never do that. It shouldn't have done it in that particular case, because the statute, what DeKalb said about was a two-step process. First, we look at the statute. And the question is, delivery, indivisible or not? Correct. And there are three, there are several ways of proving delivery. There are three. There are three statutory alternatives, which by Mr. Hinkle's own advice. And the Texas courts have said, you don't have to have a unanimous jury verdict on any of the three. You can just put delivery and then define it, and the jury can decide. I don't think that's a correct statement of state law. If they just charged delivery and said, deliver, period. I'm not going to argue with you. I know what you think, and I know what I read. And we can just, we don't have to argue. Well, let me ask you this about the, because I'm looking a little bit past where Judge Owen was directing you to, right at 2287. And it said, the Ninth Circuit's approach runs headlong into the congressional choice about what you're supposed to do. Instead of reviewing documents like an indictment to determine which statutory phrase was the basis of conviction, they look at what the defendant actually did. You're not arguing for that. You're arguing for the statutory phrase. The question, really, that has been posited by your opponent is whether that statutory phrase has meaning in this context. Now, my question is, did the statute, Section 459 of the California Code, have a definition of entry that's similar to this definition of delivery? Not at all. Okay. So, entry had just been construed as being kind of walk, entering, walking in a door. Correct. And so, there wasn't entry means either walking into a store or using a hammer to bust in a window. There wasn't a definition like that that we would then be further looking to. Correct. Okay. So, really, what happened in desk camps was the quintessential just looking at the facts, looking at the Uzi in the bank instead of just saying, was there a weapon? Right. There, the court wasn't looking at a statute and saying, all right, I'm going to look at the facts now, and which of these statutory alternatives, you know, using a hammer to break in or just walking into shoplift or what. The court wasn't taking the facts, looking at the facts of the case to see which statutory phrase supported the conviction. It was instead looking at the facts to say, although... Those facts are generic burglary. Right. Those facts are generic burglary. Okay. But this is what's so hard about this is where do you stop? I mean, I think theoretically I've got this correctly in my head. It's just when you try to apply it that it becomes really convoluted. And so that's why I'm, like, back to my question about the right answer. Again, if desk camps has given us the answer, I've got to follow that. I'm not quite to where I'm... You know, Judge Owen has given you an analysis that's very scholarly. I'm not sure I'm there, but I'm not sure I'm where you are or your opponent is either, because I'm just not sure this opinion is really that helpful, which may be, as your opponent said, why we have a circuit split. Exactly, and why it appears that it may be going to the court through Mathis. But if we look at what animated Taylor, what animated Shepard into camp, even if they used perhaps a modicum of imprecision in using the word element, we see that what animated those policy concerns that animated those decisions are satisfied here. There is, I'm confident that there is no way the state of Texas could have indicted Mr. Hinkle for actually transferring heroin and then prove to a jury that he actually offered to sell it. In that instance, Mr. Hinkle would have been entitled to an acquittal. And when that fact of actual transfer is necessary to the fact of his conviction, the government... That is not a mere fact. It is in the statute as a definition of delivery. In a disjunctive faction, if we accept your definition of include and what that means, there's a disjunctive definition of delivery that this meets one element of. So it's not simply a fact in the way that it was Monday when the bank was robbed is a fact. Correct. It necessarily was predicated on a statutory phrase that by that phrase requires that that fact existed, the fact of an actual transfer. If it was possible, if it was possible for the state to have charged Mr. Hinkle with actually transferring heroin and yet proved that and obtained a sustainable conviction merely on an offer to sell, then maybe there's merit to his argument. But I've yet to see anything that says the state could indict it this way, prove it another way, and yet still have a sustainable conviction. So one other thing, should we wait for... I mean, the Supreme Court's going to have to fix this at some point. Is there something far enough along that it's worth waiting on? I think Mathis is set for conference next week. I don't know the Supreme Court term well enough to know whether that means, if they accept it and accept it quickly, whether they'll handle it this term or not. I just don't know. But I know that Mr. Hinkle necessarily had to have acknowledged the fact that his conviction was predicated on the statutory phrase. Can you remind me, like, how long would he serve with or without this, and so what effect do we have on him if we wait? Certainly. I think his sentence is 188 months. And frankly, I can't recall what his range would have been without the career offender enhancement. And how long into his sentence is he? I don't know, Your Honor. The sentence was imposed, I believe, in early spring of 2015. So he, for some reason, I think he would have had the guidelines, not what he would have had, but the guidelines would have been substantially lower. Now, as I noted in my prong four argument at the very end of the brief, and this is a guy who the judge said had a very terrible criminal history, and there's every reason to believe he would have gotten an above-guideline sentence in that instance, unless the Court has any additional questions, I would see the rest of my time. Thank you. Can you address that, Mr. Page, the effect on your client of waiting? I mean, I know waiting is not a good thing in general for criminal defendants. As well, I know we have a general policy of not waiting on Supreme Court cases. But if we were inclined to wait, is there a range in which he's serving past that already? You don't understand what I'm asking? Well, if he was sentenced in spring of this year, he's not quite in what we somewhat darkly call bonus time yet. His range would be 33 to 41 months without career offender. So 33, I mean, he could get close to that, I think, if the Supreme Court dragged on and then there was a GVR and then it came back here. Do you have any view on waiting? Assuming it doesn't put him in what you're calling bonus time, would you have any view on that if something looks like it's percolating quickly up? I don't think the court should wait because there's the alternative argument of whether this is a disjunctive statute. What do you think of his A or B includes C thing as meaning that delivery includes offer to sell but not that actual or constructive transfer includes offer to sell? There isn't any doubt that saying that offer to sell is a subset of actual transfer is counterintuitive. But so is the idea that offer to sell is a form of delivery. I mean, when you say delivery, you mean that it goes from one person to another and yet the statute says specifically offer to sell is a kind of delivery. So I think from the text and the structure of the statute. The statute's screwed up no matter what. Right, and we have to ask what it means. It's using some surprising terms of art, so I'll just put it that way. And the best clue that it has is that it puts or between actual and constructive transfer and doesn't put it in between those kinds of transfers and offers to sell. And if we want to respect that legislative choice, the easiest way to do that is to say that the legislator contemplated there would be some overlap between offers to sell and those other kinds of transfer. So to answer your— as you perceive it from discamps or just justice in the American way, is what? When you have a definition, so you have the statute says A, B, or C. B means X, Y, or Z. Then you think you can never look at that X, Y, or Z. You're stuck with just B. And X, Y, and Z all have to be a crime of violence or a drug conviction or whatever. You could look at X, Y, and Z if state law gave you a right to a unanimous jury determination that it is X as opposed to Y or Z in all cases. And that, I think, is consistent with— How is that consistent with footnote 2 that says we don't have to parse state law to figure that out? Well, it would suggest that footnote 2 is an inaccurate prediction. But it is an inaccurate prediction in any case because there are going to be cases where there are facts that appear in an indictment which have to be proven to the unanimous satisfaction of a jury even though they don't appear in the text of a statute. So, for instance, like in Calderón-Pena, the manner and means of injury to a child was causing an auto accident. Well, it seems to me that under the government's reading of footnote 2, if by causing an auto accident appeared in the indictment, then it is necessarily an element of the statute, even though it doesn't appear anywhere in the statute. So I think the lesson of discamps is that it has to be something that the state statute defines as part of the offense, as an element of the offense. And if a jury doesn't have to find it unanimously, then the statute isn't doing that. Part of the reason that this is the correct answer, even if it's not one that's clearly supported by discamps, is that there is no incentive for a defendant to squabble about which prong of the statute he violated. If the defendant wants to say—I mean, it is not a very good strategy for a defendant to say, I didn't actually transfer this as the indictment says. I only offered to sell it. Because in doing that, you're conceding—the defendant is conceding guilt. Yes, he could go to trial and attempt to secure a variance, but at some point he's inviting the amendment of the indictment and essentially conceding guilt by saying, I only violated the statute in this non-qualifying way. And that is part of the reason that discamps says that you can only look to elements of an offense. There's nothing further. Thank you.